# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CRIMINAL NO. 3:19-CR-0146-B |
| | § | |
| LEAH HAGEN (1), | § | |
| MICHAEL HAGEN (2), | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Defendant Leah Hagen's and Defendant Michael Hagen's Motion to Dismiss the Indictment and Superseding Indictment and Brief in Support (Doc. 52) and Motion for Bill of Particulars (Doc. 63). For the following reasons, the Court **DENIES** the Hagens' motions.

## I.

## BACKGROUND

On March 27, 2019, Leah and Michael Hagen were indicted on one count of conspiring to defraud the United States and to pay and receive health care kickbacks under the Anti-Kickback Statute. *See* Doc. 1, Indictment, 5 (alleging violations of 18 U.S.C. § 371 and 42 U.S.C. §§ 1320a-7b(b)(1)–(2) (the "Anti-Kickback Statute")). On September 12, 2019, the Government filed a superseding indictment that included an additional count against the Hagens for conspiring to commit money laundering in violation of 18 U.S.C. § 1956(h). Doc. 50, Superseding Indictment, 11.

Generally, the superseding indictment alleges that from around March 2016 to January 2019, the Hagens knowingly conspired to pay illegal kickbacks and bribes to Herb Kimble's international

- 1 -

call-center businesses in exchange for completed, signed prescriptions for durable medical equipment ("DME") and other Medicare-required documents (collectively referred to in the superseding indictment as "doctors' orders"). *Id.* ¶¶ 20–31. The Hagens purportedly operated this scheme through two DME companies: Metro DME Supply and Ortho Pain Solutions. *Id.* at 1.

The superseding indictment alleges the following scheme. The Hagens enrolled Metro DME Supply as a Medicare provider. *Id.* ¶ 22. In doing so, they promised to comply with all the Medicare rules and regulations, including compliance with the Anti-Kickback Statute. *Id.* Then, through Metro DME Supply, the Hagens paid illegal kickbacks and bribes—totaling around $6.6 million—to Herb Kimble in exchange for the completed doctors' orders. *Id.* ¶ 23. Metro DME Supply purportedly provided services to Medicare beneficiaries from Dallas County, Texas; and Metro DME Supply would bill Medicare for these services. *Id.* ¶ 24.

Around August 2017, as the result of an audit, Centers for Medicare and Medicaid Services (CMS) suspended Medicare payments to Metro DME Supply. *Id.* ¶ 25. CMS notified Leah Hagen of this suspension. *Id.* In September 2017, "Metro DME Supply voluntarily terminated its operations and its certification with original fee-for-service Medicare." *Id.* ¶ 26.

However, purportedly in the same month that Metro DME Supply terminated its operations, the Hagens began paying illegal kickbacks and bribes through their other DME company, Ortho Pain Solutions, to Kimble's companies in exchange for doctors' orders. *Id.* ¶ 27. These payments allegedly totaled to approximately $8.2 million. *Id.*

The superseding indictment alleges that the doctors' orders that the Hagens received from their agreement with Kimble's companies were "generated often in the absence of any preexisting doctor-patient relationship or physical examination, and frequently based solely on a short telephonic

conversation." *Id.* ¶ 28. Yet, the Hagens would "submit[] claims to fee-for-service Medicare and Medicare Advantage plan sponsors for reimbursement based on" these orders. *Id.*

The superseding indictment further alleges that the Hagens, with Kimble's and others' help, attempted to conceal their scheme from Medicare and state regulators by creating "sham contracts, invoices, and other documentation that disguised the payments as for marketing and business process outsourcing[.]" *Id.* ¶ 29. And the superseding indictment describes a number of overt acts that the Hagens purportedly committed, with Kimble and others, and in furtherance of the conspiracy. *Id.* ¶ 31. First, on April 4, 2016, Leah Hagen, on behalf of Metro DME Supply, signed a Business Process Outsourcing and Call Center Services Agreement and a Marketing Services Agreement with Kimble's companies. *Id.* ¶¶ 31(b), (c). Thereafter, on April 7, 2016, Leah Hagen emailed Kimble, Michael Hagen, and others, stating: "We are ready to get this marketing campaign rolling. . . . We approved the sample telemed RX that were sent over. We agree to do lumbar and wrist—Medicare for now." *Id.* ¶ 31(d). Next, on August 5, 2016, Leah Hagen emailed Kimble and others, "expressing her concern that the number of doctors' orders was not on target." *Id.* ¶ 31(e). Then, on September 20, 2017, Leah Hagen emailed representatives of one of Kimble's companies, Kimble, and Michael Hagen to provide signed agreements for marketing and business process outsourcing services, this time on behalf of Ortho Pain Solutions. *Id.* ¶ 31(f). Last, the superseding indictment alleges that on January 26, 2019, the Hagens discussed with Kimble that they had "paid him approximately $280 per DME product in exchange for completed doctors' orders." *Id.* ¶ 31(a).

Overall, Count One alleges that the Hagens submitted "approximately $17 million in claims to original fee-for-service Medicare for DME, the vast majority of which were the product of illegal kickbacks and bribes," and based on doctors' orders that the Hagens received from Kimble in

exchange for illegal kickbacks and bribes. *Id.* ¶ 30.

Count Two of the superseding indictment alleges that the Hagens knowingly and willfully conspired with others, including Kimble, to knowingly transfer money and funds from "a place in the United States to a place outside of the United States with the intent to promote" the conspiracy alleged in Count One. *Id.* ¶¶ 32–33.

Pending before the Court are the Hagens' motion to dismiss the superseding indictment and motion for a bill of particulars. Doc. 52, Defs.' Mot. to Dismiss; Doc. 63, Defs.' Mot. Bill of Particulars. All briefing has been received on these motions, and as such, they are ripe for review.

## II.

## LEGAL STANDARD

A.    *Sufficiency of an Indictment*

Federal Rule of Criminal Procedure 7(c)(1) provides that an indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged . . . ." "The purpose of an indictment is 'to allege each essential element of the offense charged so as to enable the accused to prepare his defense and to allow the accused to invoke the double jeopardy clause in any subsequent proceeding.'" *United States v. Lawrence*, 727 F.3d 386, 397 (5th Cir. 2013) (quoting *United States v. Morrow*, 177 F.3d 272, 296 (5th Cir. 1999)). "Thus, an indictment is sufficient if it 'contains the elements of the offense charged and fairly informs the defendant of the charge against which he must defend.'" *Id.* (quoting *United States v. Fuller*, 974 F.2d 1474, 1480 (5th Cir. 1992)). "It is not necessary for an indictment to go further and to allege in detail the factual proof that will be relied upon to support the charges." *United States v. USPlabs, LLC*, 338 F. Supp. 3d 547, 557 (N.D. Tex. 2018) (quoting *United States v. Crippen*, 579 F.2d 340, 342 (5th Cir. 1978)).

"Generally, an indictment [that] follows the language of the statute under which it is brought is sufficient to give a defendant notice of the crime of which he is charged." *Id.* (alterations in *United States v. USPlabs*) (quoting *United States v. Thomas*, 348 F.3d 78, 82 (5th Cir. 2003)).

"[A] motion to dismiss an indictment for failure to state an offense is a challenge to the sufficiency of the indictment[.]" *United States v. Kay*, 359 F.3d 738, 742 (5th Cir. 2004). "When the court decides such a motion, it is required to 'take the allegations of the indictment as true and to determine whether an offense has been stated.'" *United States v. Daniels*, 316 F. Supp. 3d 949, 953 (N.D. Tex. 2018) (quoting *Kay*, 359 F.3d at 742). "The propriety of granting a motion to dismiss an indictment . . . by pretrial motion is by-and-large contingent upon whether the infirmity in the prosecution is essentially one of law or involves determinations of fact[.]" *Id.* (quoting *United States v. Fontenot*, 665 F.3d 640, 644 (5th Cir. 2011)). "A court must deny a motion to dismiss if the motion relies on disputed facts." *USPlabs*, 338 F. Supp. 3d at 557 (citing, *inter alia*, *United States v. Covington*, 395 U.S. 57, 60 (1969)).

B.     *Bill of Particulars*

Under Federal Rule of Criminal Procedure 7(f), a defendant "may move for a bill of particulars before or within 14 days after arraignment or at a later time if the court permits." Fed. R. Crim. P. 7(f). The district court has discretion over whether to grant the request. *United States v. Shults*, 2018 WL 5023779, at *1 (N.D. Tex. Sept. 18, 2018). "The purposes of a bill of particulars are to provide the defendant with sufficient notice of the charges against him so that he can prepare an adequate defense, to minimize surprise to the defendant at trial, and to enable the defendant to plead double jeopardy in the event of a subsequent prosecution." *United States v. Faulkner*, 2011 WL 2880919, at *1 (N.D. Tex. July 15, 2011) (citing, *inter alia*, *United States v. Carlock*, 806 F.2d 535,

550 (5th Cir. 1986)). "A bill of particulars cannot be used, however, to 'obtain a detailed disclosure of the government's evidence prior to trial[.]'" *Id.* (quoting *United States v. Kilrain*, 566 F.2d 979, 985 (5th Cir. 1978)); *see also United States v. Davis*, 582 F.2d 947 951 (5th Cir. 1978) ("[I]t is well established that generalized discovery is not a permissible goal of a bill of particulars."). Instead, the Court "must balance the needs of the defendant against the [G]overnment's right not to disclose its witnesses, evidence or legal theories." *Shults*, 2018 WL 5023779, at *1 (quoting *United States v. Campbell*, 710 F. Supp. 641, 642 (N.D. Tex. 1989)).

"In determining whether a bill of particulars is necessary, the court examines 'whether the indictment sets forth the elements of the offense charged and sufficiently apprises the defendant of the charges against him to enable him to prepare for trial.'" *Faulkner*, 2011 WL 2880919, at *2 (quoting *United States v. Martinez*, 2010 WL 2025226, at *7 (N.D. Tex. May 21, 2010)). "Morever, even if the indictment does not furnish sufficient information to enable the defendant to prepare a defense and to avoid surprise at trial, where the government has provided the necessary information in another satisfactory form, such as through discovery, a bill of particulars is unnecessary." *Id.* (citing *United States v. Kirkham*, 129 F. App'x 61, 72 (5th Cir. 2005)).

## III.

## ANALYSIS

The Court starts with the Hagens' motion to dismiss the superseding indictment. The Hagens lodge three objections to the superseding indictment. First, they argue that the Government has not sufficiently alleged facts to state a claim for either offense charged in the superseding indictment. Second, they argue that the superseding indictment is unconstitutionally vague. Third, they argue that the rule of lenity protects them against prosecution under the particular circumstances of this

case. Addressing each argument in turn, the Court determines that the motion to dismiss should be **DENIED**.

The Hagens' motion for a bill of particulars reprises many of the same arguments raised in their motion to dismiss. Specifically, they argue that because the superseding indictment fails to sufficiently allege a scheme to defraud or a conspiratorial agreement, they cannot adequately prepare a defense. For the much of the same reasons the Court denies the Hagens' motion to dismiss on sufficiency grounds, the Hagens' request for a bill of particulars is **DENIED**.

A.    *Motion to Dismiss the Superseding Indictment*

    1.    Sufficiency of the Superseding Indictment

The superseding indictment charges the Hagens with two counts: (1) conspiring to defraud the United States and to pay and receive health care kickbacks; and (2) conspiring to commit money laundering. Doc. 50, Superseding Indictment, ¶¶ 18–33. Reviewing each count separately, the Court decides whether the superseding indictment "contains the elements of the offense charged and fairly informs the defendant[s] of the charge against which [they] must defend." *Lawrence*, 727 F.3d at 397 (quoting *Fuller*, 974 F.2d at 1480).

    i.    *Conspiring to defraud the United States under 18 U.S.C. § 371*

The Hagens first contend that the Government has failed to sufficiently allege any element of Count One: Conspiracy to Defraud the United States and to Pay and Receive Health Care Kickbacks. Doc. 52, Mot. to Dismiss, 5. The Court starts with an overview of the law, then proceeds to summarize the allegations as to this Count in the superseding indictment, and finally considers the parties' arguments.

The elements for a conspiracy under 18 U.S.C. § 371 are: "(1) an agreement between two

or more persons to pursue an unlawful objective; (2) the defendant's knowledge of the unlawful objective and voluntary agreement to join the conspiracy; and (3) an overt act by one or more of the members of the conspiracy in furtherance of the objective of the conspiracy." *United States v. Njoku*, 737 F.3d 55, 63–64 (5th Cir. 2013) (quoting *United States v. Mauskar*, 557 F.3d 219, 229 (5th Cir. 2009)). 42 U.S.C. § 1320a-7b(b), the Anti-Kickback Statute, "criminalizes the payment of any funds or benefits designed to encourage an individual to refer another party to a Medicare provider for services to be paid for by the Medicare program." *United States v. Miles*, 360 F.3d 472, 479 (5th Cir. 2004). Section 1320a-7b(b)(1) provides, in full, that:

> Whoever knowingly and willfully solicits or receives any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind—
>
>> (A) in return for referring an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program, or
>>
>> (B) in return for purchasing, leasing, ordering, or arranging for or recommending purchasing, leasing, or ordering any good, facility, service, or item for which payment may be made in whole or in part under a Federal health care program,
>
> shall be guilty of a felony and upon conviction thereof, shall be fined not more than $100,000 or imprisoned for not more than 10 years, or both.

42 U.S.C. § 1320a-7b(b)(1). Similarly, § 1320a-7b(b)(2) provides that:

> Whoever knowingly and willfully offers or pays any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind to any person to induce such person—
>
>> (A) to refer an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program, or
>>
>> (B) to purchase, lease, order, or arrange for or recommend purchasing,

- 8 -

leasing, or ordering any good, facility, service, or item for which payment may be made in whole or in part under a Federal health care program,

shall be guilty of a felony and upon conviction thereof, shall be fined not more than $100,000 or imprisoned for not more than 10 years, or both.

*Id.* § 1320a-7b(b)(2).

Count One of the superseding indictment alleges that from around March 2016 to January 2019, the Hagens knowingly and willfully conspired with each other and others to commit the following offenses:

a.   to defraud the United States by impairing, impeding, obstructing and defeating through deceitful and dishonest means, the lawful government functions of the United States Department of Health and Human Services in its administration and oversight of the Medicare program; and

b.   to violate Title 42, United States Code, Section 1320a-7b(b)(1), by knowingly and willfully soliciting and receiving remuneration, including kickbacks and bribes, directly and indirectly, overtly and covertly, in return for referring individuals for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole or in part by Medicare; and for the purchasing, leasing, ordering and arranging for and recommending the purchasing, leasing and ordering of any good, item and service for which payment may be made in whole and in part by a Federal health care program, that is, Medicare; and

c.   to violate Title 42, United States Code, Section 1320a-7b(b)(2), by knowingly and willfully offering and paying remuneration, including kickbacks and bribes, directly and indirectly, overtly and covertly, in return for referring individuals for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole or in part by Medicare; and for the purchasing, leasing, ordering and arranging for and recommending the purchasing, leasing and ordering of any good, item and service for which payment may be made in whole and in part by a Federal health care program, that is, Medicare.

Doc. 50, Superseding Indictment, 5–6. The superseding indictment proceeds to allege the objective of the conspiracy; the manner and means by which the Hagens sought to accomplish the objective

of the conspiracy; and the overt acts the Hagens and their coconspirators committed in furtherance of the conspiracy. *Id.* at 6–10; *see also supra* at 2–3.

The Court now proceeds to the parties' arguments. In considering these arguments, the Court emphasizes that it is required to take the allegations just outlined as true. *See Daniels*, 316 F. Supp. 3d at 953 (quoting *Kay*, 359 F.3d at 742).

First, as to the elements of conspiracy under § 371, the Hagens argue, without support, that "[d]ue to the potentially broad reach of 18 U.S.C. § 371, the law requires that the Government allege *specific facts* in an indictment as to how the conspiracy came about." Doc. 52, Mot. to Dismiss, 5. The Hagens proceed to assert that the superseding indictment fails to allege "the existence of a conspiratorial agreement." *Id.* at 6. They also dispute that the superseding indictment has sufficiently alleged: "with whom" the Hagens made an agreement; "when" the alleged agreement was made; "how the agreement was made"; and "whether the agreement was made knowingly." *Id.* Finally, the Hagens argue that the Government's allegation that the purpose of the conspiracy was to receive kickbacks is too conclusory. *Id.*

The Hagens next dispute that the Government has sufficiently alleged facts that show that the Hagens knew of the unlawful objective of the conspiracy and voluntarily agreed to join it. *Id.* In fact, the Hagens contend, the Government's allegations do not amount to inherently unlawful activity because "the intent to compensate advertisers" is permissible under the Anti-Kickback Statute. *Id.* at 7 (quoting *United States v. Shoemaker*, 746 F.3d 614, 628 (5th Cir. 2014)). And the Hagens claim that the agreements they made with marketing companies were merely for marketing and business processing services, not doctors' orders. *Id.* Last, the Hagens argue that "no overt act in furtherance of the objective of the conspiracy has been alleged." *Id.* at 8. Like their previous

argument, the Hagens maintain that the payments they made to marketing companies were lawful, and thus cannot be considered overt acts in furtherance of a conspiracy. *Id.*

The Government responds that the Hagens have misconstrued the facts alleged in the superseding indictment. Doc. 59, Gov't's Resp., 6. First, the Government notes that the superseding indictment properly sets forth the elements and tracks the language of the statute in charging the Hagens. *Id.* at 5 ("An indictment tracking the language of the statute is sufficient to charge a violation of 18 U.S.C. § 371." (quoting *United States v. Gordon*, 780 F.2d 1165, 1171 (5th Cir. 1986))). Next, the Government asserts that the Hagens "simply disregard the superseding indictment's reference to specific allegations that properly charge them with each element of each offense." *Id.* at 6–7. The Government goes on to chart the Hagen's purported mischaracterizations. *See id.* at 7–8. For example, when the Hagens assert in their motion that the superseding indictment fails to allege "with whom either Leah Hagen or Michael Hagen reached an agreement," the Government points to multiple paragraphs where the indictment notes that "Leah Hagen and Michael Hagen reached an agreement with Herb Kimble, among others." *Id.* at 7 (comparing Doc. 52, Defs.' Mot., 10 with Doc. 50, Superseding Indictment, ¶¶ 23, 27, 29–31).

Next, the Government claims that the Hagens misconstrue the law with respect to the sufficiency of an indictment. Specifically, the Government argues that the Hagens' challenge that the superseding indictment does not prove that the Hagens acted knowingly and willfully is a challenge to the sufficiency of the evidence to be presented at trial, not a challenge to the sufficiency of the allegations in the indictment. *Id.* at 10–11 (collecting cases). The Government asserts that, at this stage, it need not provide the Hagens with every piece of evidence it plans to rely on at trial to prove its case. *Id.* at 11 (citing *Crippen*, 579 F.2d at 342). And the Government distinguishes the

authority that the Hagens rely on for their claim that more specific information is required. *Id.* at 11–12.

Finally, the Government contends that the Hagens' arguments related to defenses they might be able to prove at trial are irrelevant in deciding their motion to dismiss. *Id.* at 12. The Government maintains that the Hagens' defenses—*e.g.*, that the Hagens' agreements with Kimble's businesses were for lawful marketing and business services contracts—are arguments for the jury to consider at trial or for the Court to consider on a motion for a judgment of acquittal. *Id.* But the Government asserts that it is "not required to anticipate affirmative defenses or negate statutory exceptions" in an indictment. *Id.* at 12–13 (collecting cases).

The Court concludes that the superseding indictment is sufficient as to Count One "because it contains the elements of the offense charged and fairly informs [the Hagens] of the charge against which [they] must defend." *United States v. Robinett*, 2018 WL 1640116, at *3 (N.D. Tex. Apr. 5, 2018) (citation omitted). As laid out above, the superseding indictment tracks the specific language of both 18 U.S.C. § 371 and the Anti-Kickback Statute in charging the Hagens. *See supra* at 8–10 (comparing 18 U.S.C. § 371 and 42 U.S.C. §§ 1320a-7b(b)(1)–(2) with Doc. 50, Superseding Indictment, 5–10). "[A]n indictment which follows the language of the statute under which it is brought is sufficient to give [the] defendant[s] notice of the crime which [they are] charged." *United States v. Massey*, 849 F.3d 262, 264 (5th Cir. 2017) (citation omitted). Here, the superseding indictment provides the Hagens with more than enough information to give them notice that they are charged with conspiring to defraud the United States and to violate the Anti-Kickback Statutes. The superseding indictment charges the Hagens with "knowingly and willfully" conspiring with each other, Kimble, and others to commit certain offenses against the United States, specifically,

defrauding the Department of Health and Human Services (HHS) and violating the Anti-Kickback Statute provisions by soliciting, receiving, offering, and paying remuneration in return for doctors' orders. Doc. 50, Superseding Indictment, ¶ 19(a)–(c). Morever, the superseding indictment lays out the objective of the conspiracy, *id.* ¶ 20 ("to unlawfully enrich themselves and others "); the manner and means by which the objective of the conspiracy was accomplished, *id.* ¶¶ 21–30[1]; and specific overt acts committed in furtherance of the conspiracy. *Id.* ¶ 31; *see also supra* at 2–3, 9–10.

The Court agrees with the Government that the Hagens' challenges to the superseding indictment are either (1) mischaracterizations of the contents of the pleading; or (2) not appropriate for resolution at this stage of the proceeding.

To start, as the Government points out, the Hagens cite to no authority that supports their contention that a greater degree of specificity is required for this count. *See* Doc. 52, Mot. to Dismiss, 5; Doc. 59, Gov't's Resp., 11–12. Indeed, it is well-established in the Fifth Circuit that "[i]t is not necessary for an indictment to go further and to allege in detail the factual proof that will be relied upon to support the charges." *Robinett*, 2018 WL 1640116, at *2 (quoting *Crippen*, 579 F.2d at 342). Thus, absent countervailing authority, the Hagens' argument that more is required is without merit.

Aside from demands for more detailed allegations, the Hagens' reply reveals that their chief complaints boil down to factual disputes about the veracity of the allegations in the superseding indictment. For example, in their motion, the Hagens argue that "there are no allegations that the

---

[1] This includes, but is not limited to, specific allegations that the Hagens enrolled Metro DME Supply as a Medicare provider; promised to comply with all Medicare rules and regulations; paid millions in illegal kickbacks to Kimble's companies in exchange for doctors' orders; billed Medicare for DME services; and concealed these kickbacks through sham documentation disguised as payment for marketing and business services. *Id.*

Hagens made payments with the intent to induce any unlawful prescription or that they were even aware of any such arrangement." Doc. 52, Mot. to Dismiss, 6. The Government then responds by pointing to two examples of overt acts from the superseding indictment that purportedly reflect the Hagens' intent—first, to the Hagens discussing with Kimble that they paid him approximately $280 per DME product in exchange for completed doctors' orders; and second, to a August 5, 2016, email where Leah Hagen expressed her "concern that the number of doctors' orders was not on target." Doc. 59, Gov't's Resp., 7–8 (citing Doc. 50, Superseding Indictment, ¶¶ 31(a), (e)).[2] In their reply, the Hagens argue that these allegations "do not reveal an intent to induce." Doc. 62, Defs.' Reply, 7. Instead, they assert, these communications are "in line with legitimate marketing practices" because they indicate, for example, the amount of marketing required to yield patient interest under the allegedly legitimate marketing agreements with Kimble's companies. *Id.* Indeed, this *could* be a potentially innocent explanation for these discussions. But the communications could also be evidence of overt acts that the Hagens committed to make payments to Kimble's companies with the intent to induce doctors' orders. Regardless, the Hagens' reply amounts to no more than factual disputes about how to construe the communications. And factual disputes are not fit for resolution

---

[2] Moreover, although the Government does not rely on them, there are general allegations in the superseding indictment that the Hagens "knowingly and willfully" conspired to commit certain offenses, including "knowingly and willfully soliciting and receiving remuneration" and "offering and paying remuneration" in return for doctors' orders. Doc. 50, Superseding Indictment, ¶¶ 19(a)–(c). There are also at least two paragraphs of the superseding indictment that specifically allege that the Hagens used their DME companies to pay illegal kickbacks to Kimble's companies "in exchange for" completed doctors' orders. *Id.* ¶¶ 23, 27. Finally, the superseding indictment alleges that the Hagens attempted to conceal their bribes to Kimble's companies through "sham contracts" and documents that disguised their payments as for legitimate business services. *Id.* ¶ 29. Along with the overt acts the Government points to, these allegations also contradict the Hagen's assertion that "there are no allegations that the Hagens made payments with the intent to induce any unlawful prescription or that they were even aware of any such arrangement." Doc. 52, Mot. to Dismiss, 6.

on a motion to dismiss. *See USPlabs*, 338 F. Supp. 3d at 557 (collecting cases) ("A court must deny a motion to dismiss if the motion relies on disputed facts.").

This conclusion also applies to the Hagens' argument that the Government has failed to "identify the existence of a conspiratorial agreement[.]" Doc. 62, Defs.' Reply, 3. The Hagens strenuously assert that the Government cannot refer to allegations related to the personal services and business agreements made between the Hagens' companies and Kimble's companies as allegations of a conspiratorial agreement. *Id.* at 3–6. But this argument is again just another argument that the Hagens' business relationship with Kimble was legitimate. The Court acknowledges, as the Hagens point out, that the Fifth Circuit has held that "the mere fact that the good or service provider compensates the advertiser following each purchase is insufficient to support the provider's *conviction* for making a payment 'to refer an individual to a person' under" the Anti-Kickback Statute. *Shoemaker*, 746 F.3d at 628 (emphasis added) (quoting *Miles*, 360 F.3d at 480). But, as the Government responds and the Court's emphasis makes clear, the *Shoemaker* court was deciding whether the evidence presented at trial was sufficient to support a conviction under the Anti-Kickback Statute. *Id.* at 619, 628.[3] Here, on a motion to dismiss, the Court must take the Government's allegations with respect to the Hagens' dealings with Kimble as true. The Hagens' motion thus again falls short on this ground.

Likewise, insofar as the Hagens' arguments go to a defense they might assert at trial—*e.g.*, that one of the safe harbors to the Anti-Kickback Statute "exempts their personal service

---

[3] Additionally, in *Miles*, the case on which *Shoemaker* relies, the Fifth Circuit reversed convictions under the Anti-Kickback Statute because the court held that "the evidence adduced at trial" did not show that payments were made "as an inducement or kickback for sending patients . . . ." *Miles*, 360 F.3d at 480. Thus, *Miles* too is inapposite from the issue before the Court here.

- 15 -

agreements," see Doc. 52, Mot. to Dismiss, 7–8—the Government is not required to address and rebut those defenses in the superseding indictment. *See United States v. Davis*, 2014 WL 6679199, at *5 (S.D. Tex. Nov. 25, 2014) (denying motion to dismiss indictment on ground that the Government did not have to address affirmative defenses regarding safe-harbor provisions of the Anti-Kickback Statute (citing *United States v. Sisson*, 399 U.S. 267, 288 (1970))).

In sum, the Court finds that the superseding indictment is sufficient as to Count One because it provides all the elements of the offense charged and fairly informs the Hagens of the charge against which they must defend. Additionally, the Hagens' arguments for dismissing the superseding indictment amount to challenges to the factual sufficiency of the allegations; and such challenges are not appropriate for the Court to consider on a motion to dismiss. Accordingly, the Hagens' motion to dismiss Count One of the superseding indictment on sufficiency grounds is **DENIED**.

ii.    *Conspiring to commit money laundering*

The Hagens move to dismiss Count Two of the superseding indictment on similar grounds. Specifically, the Hagens argue that the Government has failed to provide sufficient substantive allegations in support of this charge and that the only allegations the Government offers in support of the charge are "conclusory and impermissibly vague[.]" Doc. 52, Mot. to Dismiss, 8.

Count Two of the superseding indictment charges the Hagens with conspiring to commit money laundering in violation of 18 U.S.C. § 1956(h). Doc. 50, Superseding Indictment, 11. "To establish conspiracy to commit money laundering, the government must prove (1) that there was an agreement between two or more persons to commit money laundering and (2) that the defendant joined the agreement knowing its purpose and with the intent to further the illegal purpose." *United States v. Fuchs*, 467 F.3d 889, 906 (5th Cir. 2006) (citation omitted). "The Government need not

- 16 -

prove an overt act in furtherance of the conspiracy." *United States v. Calderon*, 665 F. App'x 356, 359

(5th Cir. 2016) (per curiam) (citing *Fuchs*, 467 F.3d at 906).[4]

> With respect to Count Two, the superseding indictment charges:

> From in or about March 2016 through in or about January 2019, in the Dallas Division of the Northern District of Texas and elsewhere, Leah Hagen and Michael Hagen did knowingly and willfully combine, conspire, confederate, and agree with others, known and unknown to the Grand Jury, including Herb Kimble, to commit offenses under Title 18, United States Code, Section 1956, namely, to knowingly transport, transmit and transfer monetary instruments and funds from a place in the United States to a place outside of the United States, with the intent to promote the carrying on of specified unlawful activity, namely, conspiracy to defraud the United States and to pay and receive health care kickbacks, in violation of Title 18, United States Code, Section 371, in violation of Title 18, United States Code, Section 1956(a)(2)(A).

> All in violation of Title 18, United States Code, Sections 1956(h) and 2.

Doc. 50, Superseding Indictment, ¶ 33.

> As stated, the Hagens argue that these allegations are too conclusory and vague to provide

them fair notice of the conduct against which they must defend. Doc. 52, Mot. to Dismiss, 8. The

Hagens complain that the allegations do not "provide any notice of what financial transactions are

at issue, whether or how the transactions involved the proceeds of unlawful activity, whether any

circumstances indicate the Hagens knew these transactions involved the proceeds of unlawful

activity, and whether they had the requisite intent to promote or further unlawful activity . . . ." *Id.*

at 9.

> The Government first responds that Count Two adequately alleges the elements of conspiring

---

[4] As the Government notes, see Doc. 59, Gov't's Resp., 8, the Hagens list the incorrect elements in their motion. *See* Doc. 52, Mot. to Dismiss, 8. Instead, the Hagens provide the elements for money laundering. *See id.* (citing *United States v. Garza*, 42 F.3d 251, 253 (5th Cir. 1994)). However, in their reply, the Hagens focus on the proper elements. *See* Doc. 62, Defs.' Reply, 8.

to commit money laundering. Doc. 59, Gov't Resp., 9. The Government also argues that Count Two re-alleges the specific factual allegations contained in Count One regarding the underlying unlawful activity—*i.e.*, the activity related to paying illegal kickbacks and bribes to Kimble's international companies in exchange for completed doctors' orders for DME—thus providing more factual content for the basis of the money laundering allegations. *Id.* (citing Doc. 50, Superseding Indictment, ¶ 32). Last, the Government asserts that the Hagens' claim that Count Two fails to allege the specific financial transactions at issue, along with details of those transactions, is "critically flawed" because it assumes that a "conspiracy must also describe the elements of the substantive crime that is the object of the conspiracy." *Id.* Undercutting this assumption, the Government maintains that because conspiring to commit a crime is a separate offense from the underlying crime that is the object of the conspiracy, the superseding indictment need not allege facts like the details of the financial transactions, which the Hagens argue are absent. *Id.* at 9–10. In reply, the Hagens seem to concede that the superseding indictment need not plead the elements of the underlying money laundering offense. Doc. 62, Defs.' Reply, 8–9. The Hagens instead resort to arguing that Count Two fails to allege a purported agreement to commit money laundering or facts necessary to show that the Hagens knowingly entered into such an agreement with the intent to further the illegal purpose. *Id.*

The Court finds that the superseding indictment sufficiently alleges the crime set out in Count Two. The Court agrees with the Government that the superseding indictment captures and tracks the language of § 1956(h), such that it includes all the elements of the offense. *See* Doc. 59, Gov't Resp., 9. The superseding indictment alleges that the Hagens knowingly and willfully agreed, with Kimble and others, to commit money laundering by knowingly transferring funds from

somewhere in the United States to a place outside the United States, with the intent to promote the unlawful activity alleged in Count One. Doc. 50, Superseding Indictment, ¶¶ 32–33. The Hagens also have sufficient notice that the purportedly unlawful activity that they attempted to promote by transferring money from their companies in the United States to Kimble's international companies involves defrauding the United States and violating the Anti-Kickback Statute, as described in Count One. *See id.* ¶ 32 (incorporating the previous allegations in the superseding indictment).

Thus, like with Count One, the Court concludes that Count Two is sufficient "because it contains the elements of the offense charged and fairly informs [the Hagens] of the charge against which [they] must defend." *Robinett*, 2018 WL 1640116, at *3 (citation omitted). Accordingly, the Hagens' motion to dismiss Count Two of the superseding indictment on sufficiency grounds is **DENIED**.

> ## 2.    Vagueness Challenge to the Anti-Kickback Statute[5]

The Hagens' next argument is that Count One of the superseding indictment should be dismissed because the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b), is unconstitutionally vague. Doc. 52, Defs.' Mot. to Dismiss, 10. But the Hagens cite to no authority that supports this assertion. *See id.* The Government responds that courts in this circuit and others have "repeatedly and universally rejected vagueness challenges to the Anti-Kickback Statute." Doc. 59, Gov't's Resp., 14

---

[5] In addition to specifically challenging the Anti-Kickback Statute, the Hagens also argue in this section of their motion that Counts One and Two are "so vague, indefinite, uncertain, and confusing that they fail to adequately advise the Hagens of the offenses with which they are charged." Doc. 52, Mot. to Dismiss, 9. The Government notes, however, that this argument is "merely a repackaging of their sufficiency claim." Doc. 59, Gov't's Resp., 10 n.4. The Court agrees with the Government and thus rejects the Hagens' vagueness challenge to Counts One and Two for the reasons provided in Section III.A above. This includes the Hagens' blanket argument that "the Superseding Indictment denies the Hagens due process of law in violation of the Fifth and Sixth Amendments[.]" Doc. 62, Defs.' Reply, 9.

- 19 -

(collecting cases). The Hagens fail to address any of this authority in their reply. *See* Doc. 62, Defs.'
Reply, 9–10.

The Court agrees with the Government that the established law in this circuit, and for that
matter in all other circuits, forecloses the Hagens' vagueness challenge. *See United States v. Robinson*,
505 F. App'x 385, 387 (5th Cir. 2013) (per curiam); *see also, e.g., United States v. Nagelvoort*, 856
F.3d 1117, 1129–30 (7th Cir. 2017); *United States v. LaHue*, 261 F.3d 993, 1008 (10th Cir. 2001).
While the Court acknowledges that a constitutional vagueness challenge is considered "as applied
to the particular facts at issue," *Robinson*, 505 F. App'x at 387 (citation omitted), the Hagens
complain only that the statute is vague because it "does not specify that marketing arrangements
such as the Hagens' can subject them to criminal liability." Doc. 52, Mot. to Dismiss, 10. But as other
courts have noted, a defendant's "attempt to camouflage an underlying agreement to exchange
remuneration for patient referrals" with other purportedly legitimate agreements "is the very conduct
contemplated by the [Anti-Kickback Statute.]" *LaHue*, 261 F.3d at 1005 (citing *United States v. Day*,
223 F.3d 1225, 1228–29 (10th Cir. 2000)). And here, the superseding indictment alleges essentially
the same conduct against the Hagens. *See* Doc. 50, Superseding Indictment, ¶ 29. Thus, with no
other arguments that the Anti-Kickback Statute is vague as applied to them, the Court rejects the
Hagens' vagueness challenge, and **DENIES** their motion on this ground as well.

> 3.    Rule of Lenity

The Hagens' last argument is that the rule of lenity insulates them from prosecution based
on the particular circumstances of their case. Doc. 52, Mot. to Dismiss, 10–12. Specifically, the
Hagens assert that the rule of lenity protects them against "a deprivation of liberty based on activities
that remain the subject of continuous revision and debate by the Department of Health and Human

Services Office of Inspector General." *Id.* at 10. The Hagens continue by explaining that the agreements they entered into with Kimble's companies "are the type of agreements that the OIG has recognized should be exempt from [Anti-Kickback Statute] liability," based on proposed rule changes to the safe harbor provisions of the Anti-Kickback Statute. *Id.* at 11–12.

The Government has two arguments in response. First, the Government argues that the "proposed" amendments to the statute are irrelevant because they are merely proposals. Doc. 59, Gov't's Resp., 16–17. Because these proposals have not yet been adopted and because it is not known whether they will in fact be adopted, or what form they will take if adopted, the Government argues that "it is inappropriate for this Court to consider them in the context of deciding the [Hagens]' motion to dismiss." *Id.* at 17. Second, the Government asserts that the current proposed amendments state that they "would provide only prospective protection." *Id.* (citing 84 Fed. Reg. 55694-01, 55696 (Oct. 17, 2019)). Thus, the Government claims, the proposed amendment would have no bearing on this prosecution because "the superseding indictment does not allege any ongoing conduct . . . ." *Id.*

In reply, the Hagens argue that the Government "fails to recognize that the OIG's justification for the proposed revisions to the [Anti-Kickback Statute] safe harbor provisions (even if those are not adopted), attests to the fact that the [Anti-Kickback Statute] . . . gives rise to vagueness and ambiguities." Doc. 62, Defs.' Reply, 10 (emphasis omitted).

The Court believes that the Hagens' rule-of-lenity challenge is far too premature. In deciding this objection, the Court still takes the allegations in the superseding indictment as true. *See United States v. Thomas*, 724 F.3d 632, 640–41 (5th Cir. 2013). And doing so, the Court cannot assume, as the Hagens assert, that the marketing contracts they entered into with Kimble were legitimate

marketing and business service agreements. At this juncture, the Court finds that the Anti-Kickback Statute is not ambiguous as applied to the conduct alleged in Count One—*i.e.*, that the Hagens paid illegal kickbacks and bribes to Kimble's companies in exchange for completed doctors' orders with which they used to submit fraudulent claims to Medicare.

The Court also notes that it tends to agrees with the Government that the HHS-OIG's proposed amendment has no bearing on this prosecution at all. *See* Doc. 59, Gov't's Resp., 17 (citing to language that indicates that the proposed amendment would have no retroactive effect). And, indeed, it seems that proposed rules generally do not come into play when courts decide whether the rule of lenity should apply to a statute. *See Barber v. Thomas*, 560 U.S. 474, 488 (2010) ("[T]he rule of lenity only applies if, after considering text, structure, history, and purpose, there remains a grievous ambiguity or uncertainty in the statute[.]" (citation and quotations omitted)); *see also E.P.A. v. Brown*, 431 U.S. 99, 104 (1977) (refusing to review nonfinal regulations as such a practice "would be wholly novel"). The Hagens cite to no authority to the contrary, let alone a case where an indictment was dismissed based on ambiguities in a statute presented by a proposed rule. *See* Doc. 52, Mot. to Dismiss, 10–12; Doc. 62, Defs.' Reply, 9–10. Moreover, the Hagens point to no specific and current ambiguity in the text of the Anti-Kickback Statute. *See, e.g., Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 56 (1987) ("It is well settled that 'the starting point for interpreting a statute is the language of the statute itself.'" (citation omitted)). Accordingly, the Court **DENIES** the Hagens' motion to dismiss the superseding indictment based on their rule-of-lenity challenge.

B.    *Motion for a Bill of Particulars*

The Hagens move for a bill of particulars under Federal Rule of Criminal Procedure 7(f). Doc.

63, Defs.' Mot. for Bill of Particulars. More specifically, in a litany of complaints, the Hagens object to the lack of factual specificity underlying the conspiracy, the kickback and the money laundering counts, and the identity of unindicted coconspirators. *Id.* at 1. The Government opposes the motion, arguing that their requests can be chalked up to attempting to use a bill of particulars as a fishing expedition. Doc. 64, Govt's Resp., 7. And the Government states that there is more than enough factual detail for their allegations in the superseding indictment. *Id.* at 8. The Hagens' arguments here are essentially the same as the arguments made in support of their motion to dismiss. And, as stated above, the superseding indictment provides the Hagens with ample information to give them notice as to what they are charged with and to allow them to prepare a defense against those charges. *See supra* at 12, 18–19.

Rule 7(f) of the Federal Rules of Criminal Procedure gives the Court authority to direct the Government to file a bill of particulars. Fed. R. Crim. P. 7(f). Yet, a bill of particulars is not a matter of right, and the district court will be reversed for refusing to grant a request for a bill only if the defendant was "actually surprised" at trial and "thereby incurred prejudice to his substantial rights." *United States v. Williams*, 679 F.2d 504, 510 (5th Cir. 1982). "The purpose of a bill of particulars is to inform an accused of the charge with sufficient precision to reduce trial surprise, to enable adequate defense preparation, and critically, by the fleshing out of the charges to illuminate the dimensions of jeopardy." *United States v. Davis*, 582 F.2d 947, 951 (5th Cir. 1978). It is not to discover the theory of the case or the evidentiary facts to support it. *United States v. Kilrain*, 566 F.2d 979, 985 (5th Cir 1978); *United States v. Hajecate*, 683 F.2d 894, 898 (5th Cir. 1982).

"In determining whether a bill of particulars is necessary, the court examines 'whether the indictment sets forth the elements of the offense charged and sufficiently apprises the defendant of

the charges against him to enable him to prepare for trial.'" *Faulkner*, 2011 WL 2880919, at *2 (quoting *United States v. Martinez*, 2010 WL 2025226, at *7 (N.D. Tex. May 21, 2010)). In general, an indictment is constitutionally adequate if "it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117 (1974). "An indictment will usually be sufficient if it states the offense using the words of the statute itself, as long as the statute fully and unambiguously states all of the elements of the offense.'" *United States v. Superior Growers Supply, Inc.*, 982 F.2d 173, 176 (6th Cir. 1992) (citing *Hamling*, 418 U.S. at 117). A general description of the offense "must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offen[s]e, coming under the general description, with which he is charged." *Hamling*, 418 U.S. at 117–18 (quoting *United States v. Hess*, 124 U.S. 483, 487 (1888)).

The superseding indictment, as set forth in detail above, tracks the proper statutory language for both Counts One and Two. Doc 50, Superseding Indictment, 5–6, 11. And it sets forth a sufficient factual basis for the conspiratorial agreements, the scheme to defraud, and the money laundering charges. *Id.* at 6–12. In sum, there is ample information in the superseding indictment to inform the Hagens of the charges against them and for them to prepare a defense against. Much of this factual detail is set out above in the section regarding the motion to dismiss and it will not be repeated in detail here. That information is incorporated by reference here.

Specifically, the superseding indictment states the objective of the conspiracy was for the Hagens to "unlawfully enrich themselves by "offering, paying, soliciting and receiving kickbacks and bribes in exchange for the referral of Medicare beneficiary information that could be used to submit

false claims to Medicare on behalf of Metro DME Supply and Ortho Pain Solutions." Doc. 50, Superseding Indictment, ¶ 20. So far as the factual support for the conspiracy and Anti-Kickback count, the manner and means section states that, in seeking to unlawfully enrich themselves, the Hagens "paid illegal kickbacks and bribes to Herb Kimble through Company A and Company B, in exchange for completed, signed prescriptions for DME . . . ." *Id.* ¶ 23. It goes on to say that the Hagens paid kickbacks and bribes to Herb Kimble through Metro DME Supply and Ortho Pain Solutions in exchange for doctors' orders. *Id.* ¶¶ 23, 27. The overt acts section details what they did with Herb Kimble to carry out their scheme, such as discussing with Herb Kimble the payment of $280 per DME in exchange for doctors orders, and e-mailing Kimble stating they were "ready to get this marketing campaign rolling." *Id.* ¶ 31. There are many more facts in the superseding indictment, which were laid out in detail above, see, *e.g.*, *supra* at 2–3, and will not be repeated here. Suffice it to say that the factual specificity more than satisfies their burden under the Notice Clause of the Sixth Amendment. *See Russell v. United States*, 369 U.S. 749, 761–63 (1962); *Hamling,* 418 U.S. at 117.

  With regard to the money laundering charge there is no difference. Again, in connection with the motion to dismiss, there is a discussion above of the money laundering count and the facts supporting it which is incorporated by reference here. *See supra* at 16–19. With that in mind, the Court finds it a simple matter to hold that the money laundering charge, like the others, is legally and factually supported. All of the factual detail in the superseding indictment preceding the money laundering count, is incorporated by reference into that Count. Doc. 50, Superceding Indictment, ¶ 32. Then, it goes on to allege that the Hagens knowingly and willfully agreed, with Herb Kimble and others, to commit money laundering by knowingly transferring funds from somewhere in the

United States to a place outside the United States, with the intent to promote the unlawful activity of conspiring to defraud the United States and to pay and receive health care kickbacks. *Id.* at ¶¶ 32–33. From this and all of the facts preceding it, it is easy to surmise that they are being charged with committing money laundering with Herb Kimble and others with the intent to promote the conspiracy to defraud the United States and engage in a healthcare kickback scheme. In short, it is more than enough to inform the Hagens of the offenses with which they are charged and against which they must defend.

In sum, for all of the reasons set forth above, their request for a bill of particulars is **DENIED**.

Finally, with respect to the Hagen's request for the names of unindicted coconspirators as well as other information pertaining to them, the Court is aware of the case law, cited by the Defendants, that a bill of particulars is a proper tool for discovering the names of unindicted coconspirators. *Faulkner*, 2011 WL 2880919, at *3. But it is not to be granted simply to acquire a list of the Government's witnesses. *Id*. The Hagens seek the names of these people, exactly when they were involved in the conspiracy, and any meetings or conversations they had, that the Government will rely on in their case against them. Doc. 63, Def.'s Mot. for Bill of Particulars, 12–13. The Government responds that it will disclose the names of these individuals as trial witnesses approximately twenty days before trial, as this Court's scheduling order already requires. Doc. 64, Gov't's Resp., 15–16. The Hagens do not describe why they need immediate disclosures of these names or what they are going to do with them, and the Court will not speculate. Doc. 63, Def.'s Mot. for Bill of Particulars, 12–13. Since the Government is going to disclose to them all the names of unindicted coconspirators who will testify at trial, and the Defendants have wholly failed to state what they need the names for at this time, the Court denies their request for the names of the

unindicted coconspirators. *See Faulkner*, 2011 WL 2880919, at *3 (denying similar request where defendant did not "explain why [these names] [were] necessary to help him prepare for trial"). For these reasons, the Court will not grant the Hagens' request for the unindicted coconspirators' names through a bill of particulars.

## IV.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendant Leah Hagen's and Defendant Michael Hagen's Motion to Dismiss the Indictment and Superseding Indictment and Brief in Support (Doc. 52). Further, the Court **DENIES** the Defendants' Motion for Bill of Particulars and Brief in Support (Doc. 63).

SO ORDERED.

SIGNED: April 21, 2020.

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE