UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CRIMINAL NO. 3:19-CR-0146-B |
| | § | |
| LEAH HAGEN (1), | § | |
| MICHAEL HAGEN (2), | § | |
| | § | |
| Defendants. | § | |

<u>MEMORANDUM OPINION AND ORDER</u>

Before the Court is Defendants Leah and Michael Hagen's Motion to Suppress Audio and Video Recordings and Transcripts (Doc. 72). For the following reasons, the Court **DENIES** the Hagens' motion to exclude the evidence in its entirety and sets a hearing for the resolution of other evidentiary issues related to the recordings and transcripts.

I.

BACKGROUND

On March 27, 2019, Defendants Leah and Michael Hagen were indicted on one count of conspiring to defraud the United States and to pay and receive healthcare kickbacks under the Anti-Kickback Statute. *See* Doc. 1, Indictment, ¶¶ 18–38 (alleging violations of 18 U.S.C. § 371 and 42 U.S.C. §§ 1320a-7b(b)(1)–(2) (the "Anti-Kickback Statute")). On September 12, 2019, the Government filed a superseding indictment that added a count against the Hagens for conspiring to commit money laundering in violation of 18 U.S.C. § 1956(h). Doc. 50, Superseding Indictment, ¶¶ 32–33.

- 1 -

Generally, the superseding indictment alleges that from around March 2016 to January 2019, the Hagens knowingly conspired to pay illegal kickbacks and bribes to Herb Kimble's international call-center businesses in exchange for completed, signed prescriptions for durable medical equipment (DME) and other Medicare-required documents (collectively referred to in the superseding indictment as "doctors' orders"). *Id.* ¶¶ 18–31. The Hagens purportedly operated this scheme through two DME companies: Metro DME Supply and Ortho Pain Solutions. *See id.* ¶¶ 22–27. As alleged in the superseding indictment, Kimble and the Hagens concealed the kickbacks and bribes by "disguis[ing] the payments as for marketing and business process outsourcing, among other services." *Id.* ¶ 29.[1]

On April 6, 2020, the Hagens filed a motion to suppress the recordings of a pre-indictment conversation with Kimble who, unbeknown to the Hagens, recorded them for roughly three hours. Doc. 72, Defs.' Mot., 1. Specifically, the Hagens move to suppress the resulting audio recording, the Government's transcript of this recording, two video recordings, and the Government's captioning for the videos. *Id.*[2] Because the Court has received all briefing on the motion, it is now ripe for review.[3]

---

[1] For further detail regarding the allegations against the Hagens, the Court refers to the description set forth in its order denying the Hagens' motion to dismiss and motion for bill of particulars. *See* Doc. 79, Mem. Op. & Order, 2–4.

[2] The Hagens attached a letter and disc to their motion. The disc contains all files at issue. The Court refers to the disc as Document 72-2 in this Order.

[3] Since the Hagens challenge the admissibility of the recordings on evidentiary grounds, rather than constitutional grounds, the Court treats the Hagens' motion as a motion in limine seeking the exclusion of evidence, rather than a motion to suppress.

## II.

## LEGAL STANDARD

"Tape recordings may be admitted into evidence if they are reliable." *United States v. Hidalgo*, 226 F. App'x 391, 398 (5th Cir. 2007) (per curiam) (citing *United States v. Thompson*, 130 F.3d 676, 683 (5th Cir. 1997)). Whether to admit a tape recording "falls within the sound discretion of the trial court." *Thompson*, 130 F.3d at 683 (citations and quotations omitted). A recording that is partially inaudible, however, is not admissible "if 'the inaudible parts are so substantial as to make the rest more misleading than helpful.'" *Id.* (quoting *Gorin v. United States*, 313 F.2d 641, 652 (1st Cir. 1963)). When a tape is admitted, "it is within the discretion of the trial court to allow a transcript to be used by the jury to assist the jury as it listens to the tape." *United States v. Thompson*, 482 F.3d 781, 788 (5th Cir. 2007) (internal quotations omitted) (quoting *United States v. Onori*, 535 F.2d 938, 947 (5th Cir. 1976)).

## III.

## ANALYSIS

Within their motion, the Hagens raise several arguments. First, they argue that the recordings are not relevant under Federal Rule of Evidence 401 because "material portions of the recordings are not intelligible." Doc. 72, Defs.' Mot., 4. Next, they contend that even if the Court finds the recordings relevant, they are subject to exclusion under Federal Rule of Evidence 403 based on their potential to unfairly prejudice the Hagens. *Id.* at 5. Should the Court find the Hagens' Rule 401 and Rule 403 arguments unavailing, the Hagens request a hearing "to determine the audibility and admissibility of the recordings." *Id.* at 6.

Next, the Hagens assert that if the Court admits the audio recording at issue, the Court

should still prohibit the Government from offering "only portions of that recording" or any of the video recordings. *Id.* In support, the Hagens invoke Federal Rule of Evidence 106 "and the common law doctrine of completeness . . . ." *Id.*

Lastly, the Hagens urge the Court to exclude the Government's transcriptions of the audio and video recordings, because these transcriptions "are unreliable, inaccurate, and misleading." *Id.* at 7. In conjunction with this argument, the Hagens rely upon "the 'best evidence rule.'" *Id.* at 10. The Court addresses each of the Hagens' contentions below.

A.   *The Court Denies the Hagens' Motion to Exclude the Recordings in Their Entirety and Sets a Hearing to Address Any Further Objections to Specific Portions of the Recordings.*

1.   <u>The inaudible portions of the recordings do not warrant total exclusion of the recordings.</u>

The Hagens first contend that the recordings at issue are not relevant because portions of the recordings are inaudible. *Id.* at 4. According to the Hagens, the recordings contain "exchanges [that] are difficult to understand" and "loud extraneous noises . . . ." *Id.* The Hagens point out that the transcript of the audio recording contains 1,164 instances of inaudibility, "and there are many more inaudible portions in which the transcriber is clearly speculating." *Id.* For these reasons, the Hagens urge the Court to find the recordings irrelevant under Federal Rules of Evidence 401 and 402.

"Irrelevant evidence is not admissible." Fed. R. Evid. 402. Under Federal Rule of Evidence 401, "[e]vidence is relevant if . . . it has any tendency to make a fact more or less probable than it would be without the evidence," and this "fact is of consequence in determining the action."

The Court concludes that the recordings are relevant. As the Government points out, during the Hagens' conversation with Kimble, they discuss pricing of healthcare "product[s]" and and how

Michael Hagen "paid for advertising on hours." Doc. 78, Gov't's Resp., 3 (citing Doc. 72-2, Tr., 35–36). Given that the Government must prove that the Hagens conspired to pay illegal kickbacks to Kimble's businesses in exchange for prescriptions for medical equipment and Medicare documents, the Court finds the Hagens' recorded conversation relevant under Federal Rule of Evidence 401. Further, as to the Hagens' claim that the transcriber inaccurately transcribed the conversation, such an objection does not pertain to the relevance of the recordings. Instead, it relates to the reliability of the transcript, which the Court addresses below. *See infra* Section III.C. Thus, the Court holds that the recordings are relevant despite their partial inaudibility, and the Court **DENIES** the Hagens' motion to exclude the recordings as irrelevant.

Now, the Court turns to the Hagens' alternative argument that the recordings should be excluded under Federal Rule of Evidence 403. *See* Doc. 72, Defs.' Mot., 5.

Under Rule 403, the Court has the discretion to "exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, [or] misleading the jury." Fed. R. Evid. 403. The Fifth Circuit has held that district courts should not admit a recording containing inaudible portions that are "so substantial" that the audible portions of the recording are "more misleading than helpful." *See Thompson*, 130 F.3d at 683 (citation omitted).

After reviewing the entire audio recording and video recordings, the Court concludes that the recordings should not be wholly excluded on the basis of inaudibility, because much of the conversation is audible. Indeed, a listener of the audio recording—even without the aid of a transcript—can hear exchanges between Kimble and the Hagens pertaining to filmmaking, health insurance companies, Spain, cooking, and exercising, among other subjects. Further, though the

Hagens point out that the transcript of the audio recording states "inaudible" over 1,100 times, the Court notes that the transcript spans 170 pages, accounting for every minute of the three-hour conversation. *See generally* Doc. 72-2, Tr. Under these circumstances, the occasional inaudibility of the recordings is not "so substantial as to make the rest [of the recordings] more misleading than helpful." *Thompson*, 130 F.3d at 683 (citation omitted). Accordingly, the Court **DENIES** the Hagens' motion to exclude the recordings under Federal Rule of Evidence 403.

> 2.     The Court sets a hearing for the resolution of further objections to the recordings.

Though the Court denies the Hagens' motion to exclude the recordings in their entirety based on inaudibility, the Court will provide the Hagens with a hearing to assert any additional evidentiary objections to specific portions of the recordings offered by the Government into evidence. *See* Doc. 72, Defs.' Mot., 6 (requesting a pretrial hearing). This hearing is not a second chance to litigate the audibility of the entire conversation—rather, the hearing is an effort to efficiently resolve objections the Hagens raise in response to *specific portions* of the recordings upon which the Government intends to rely. The Court will provide further instructions for this hearing by separate order.

B.     *The Court Defers Ruling on Whether the Hagens May Offer Additional Portions of the Recordings.*

The Hagens contend that under the doctrine of completeness and Federal Rule of Evidence 106, "the Government should be precluded from relying on any incomplete portion" of the three-hour conversation. *Id.* at 6–7. In response, the Government points out that Rule 106 does not require the Government to play the full recording; rather, the Hagens must "particularly establish how the omitted portions of the recordings are relevant to and explain the excerpts which the Government seeks to introduce . . . ." Doc. 78, Gov't's Resp., 12.

The Court agrees with the Government. Under Federal Rule of Evidence 106, "[i]f a party introduces all or part of a . . . recorded statement, an adverse party may require the introduction, at that time, of any other part . . . that *in fairness ought to be considered* at the same time." Fed. R. Evid. 106 (emphasis added). Rule 106 "partially codifies the common-law 'rule of completeness.'" *United States v. Branch*, 91 F.3d 699, 727 (5th Cir. 1996) (citation omitted). The rule of completeness "allows a party to introduce other portions of a written or recorded statement when the opposing side introduced only a portion of that statement." *United States v. Portillo*, 969 F.3d 144, 176 (5th Cir. 2020) (citation omitted). But "the rule of completeness justifies admission of a statement only where it is necessary to qualify, explain, or place into context the portion already introduced." *Id.* (citations and quotations omitted). Accordingly, neither Rule 106 nor the rule of completeness is an avenue for freely supplementing any statement—rather, each permits the admission of additional portions for contextual purposes.

Here, the Hagens do not specify which statements "in fairness ought to be considered," Fed. R. Evid. 106, or provide context for their allegedly incriminating statements. *See Portillo*, 969 F.3d at 176 (citations omitted). Rather, in their reply, they ask that they "be permitted to introduce any portions of the recordings necessary to explain or qualify portions offered by the Government . . . ." Doc. 83, Defs.' Reply, 5. Because the Hagens have not offered these portions, the Court **DEFERS** ruling on this matter until the hearing described above. *See supra* Section III.A.2. At the hearing, the Hagens may offer any portions of the recordings they believe ought to be considered, and the Court will rule on the admissibility of these portions.

C.    *The Court Defers Ruling on the Hagens' Objection that the Transcripts Are Misleading and Denies the Hagens' Motion to Exclude the Transcripts Under the Best Evidence Rule.*

Finally, the Hagens contend that even if the Court admits portions of the recordings, it should nonetheless exclude the transcripts as "unreliable, inaccurate, and misleading" due to the inaudibility of the recordings. Doc. 72, Defs.' Mot., 7, 9. The Hagens explain that the transcript purports to define words "that are not in fact intelligible" and "reports complete lines of dialogue containing portions that are not fully intelligible even under ideal listening conditions, with no notation that any of it is unintelligible." *Id.* at 9–10. Because the Government has not yet identified which portions of the recordings or transcripts it intends to use and the Hagens have not identified any specific errors in the transcripts, the Court declines to rule on the admissibility of the transcripts at this time. The Court will rule on the admissibility of the transcripts at the hearing described above. *See supra* Section III.A.2. Prior to the hearing, the Government must identify the portions of the transcript it seeks to admit, and the Hagens may object or offer their own version of the transcript for the Court's consideration.

In addition to objecting to the transcripts as misleading, the Hagens suggest that the transcripts should be excluded "under the 'best evidence rule,'" as codified by Federal Rule of Evidence 1002. Doc. 72, Defs.' Mot., 10. The Government, however, asserts that Rule 1002 does not apply here because "the Government will not seek to prove the content of the transcripts . . . , but rather the content of the conversations" between Kimble and the Hagens. Doc. 78, Gov't's Resp., 13 n.5.

The Court concludes that the Government's use of the transcripts does not contravene Rule 1002. Rule 1002 states that "[a]n original . . . recording . . . is required to prove its content unless

these rules or a federal statute provides otherwise." Fed. R. Evid. 1002. Here, the Government is not offering the transcript in lieu of the original recording; rather, the Government appears to seek to utilize the transcript as an aid. *See* Doc. 78, Gov't's Resp., 9–10 (pointing to Fifth Circuit law permitting the use of transcripts to assist the jury). Such use does not contravene Rule 1002. *See Thompson*, 482 F.3d at 788 (stating that the trial court, in its discretion, may allow the use of a transcript "to assist the jury as it listens to the tape" (quoting *Onori*, 535 F.2d at 947)); *see also United States v. Valadez*, 186 F. App'x 508, 511 (5th Cir. 2006) (per curiam) ("The tape recording was properly admitted as the best evidence of the conversations . . . , and the transcript of that tape was properly admitted for jurors to use as an aid to understand the tape."). Thus, to the extent the Hagens seek to exclude the transcript based on Rule 1002, the Court **DENIES** the Hagens' motion.

## IV.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendants Leah and Michael Hagen's motion (Doc. 72) insofar as it seeks complete exclusion of the recordings based on inaudibility. Additionally, to the extent the Hagens seek to exclude the transcripts under the best evidence rule, the Court **DENIES** the Hagens' motion. Finally, the Court will set a hearing by separate order for the resolution of the remaining issues related to this evidence.

SO ORDERED.

SIGNED: September 10, 2020.

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE